[Decided May 1, 1897.]

## FARMERS' LOAN CO. *v.* OR. PAC. R. R. CO.

(48 Pac. 706; 38 L. R. A. 424.)

RAILROAD MORTGAGEES — RECEIVERS — WAGES OF EMPLOYEES.— A railroad
  mortgagee is not liable for unpaid wages or other obligations incurred
  by a receiver appointed at the mortgagee's instance in a foreclosure
  suit, although the trust fund is insufficient to pay them, unless such
  responsibility was imposed by the court as a condition of the appoint-
  ment, or the continuance of the receiver in office.*

From Benton: J. C. FULLERTON, Judge.

This is an appeal from an order of the Circuit
Court of Benton County denying the petition of cer-
tain employees of the receivers of the Oregon Pacific
Railroad Company for an order requiring the plaintiff
in the foreclosure suit in which such receivers were
appointed to pay the wages of the petitioners.   On
October 28, 1890, the Farmers' Loan and Trust Com-
pany, as trustees for the bondholders of the Oregon
Pacific Railroad Company and the Willamette Valley
and Coast Railroad Company, commenced a suit in
the Circuit Court of Benton County to foreclose a
mortgage on the franchise and property of the defend-
ant corporations, to secure the payment of the bonded

*NOTE.—See note to *Decker* v. *Gardner*, 11 L. R. A. 480, for a collection of cases
on the right of a receiver to apply revenues to running expenses and current obli-
gations; and the distribution of funds realized on foreclosure sales is discussed in 46
Cent. Law Jour. 51.   An interesting case on the application of the earnings of a re-
ceivership is *Central Trust Company* v. *Utah Central Railway Company*, (Utah), 50 Pac.
813.— REPORTER.

indebtedness thereof, amounting, as alleged, to $15,-
000,000; and, on its motion, T. Egerton Hogg, the
president of the corporations, was appointed receiver,
and clothed by the court with authority to operate the
railroad, and receive the income and earnings thereof.
To that end, he was empowered from time to time to
employ and discharge all needful assistants, manag-
ers, clerks, servants, agents, and employees, at such sal-
aries and compensation as he might deem advisable.
Under this appointment, Hogg operated the road as re-
ceiver until March 6, 1893, when he was removed, and
one Hadley appointed in his place, who continued the
operation thereof until January 6, 1894, when he was
also removed, and another receiver appointed. Under
the management of Hogg and Hadley, the earnings of
the road were wholly insufficient to pay the expenses
of the receivership, and, as a consequence, the wages
of the employees were allowed to fall greatly in arrear,
so that, at the time of Hadley's removal, there was
due the petitioners herein a very large sum for wages,
and no funds whatever were in the hands of the re-
ceiver with which to pay it; and we take it (although
not directly averred in the petition) that the receiver
had exhausted his power to float receiver's certificates.
Prior to this time, several unsuccessful attempts had
been made to dispose of the road under the decree in
the foreclosure suit rendered on the twenty-seventh of
April, 1891. In this condition of affairs, some of the
employees, despairing, and with reason, as the sequel
showed, of ever being able to obtain payment of their
wages from either the earnings or the *corpus* of the
mortgaged property, filed a petition on January 26,

1894, setting out substantially the facts hereinbefore detailed, and praying an order of the court requiring the plaintiff in the foreclosure suit to deposit in court sufficient money for the payment of their wages. This petition was denied, and hence this appeal.

Affirmed.

For appellants there was a brief and an oral argument by *Mr. George G. Bingham* to this effect:

The receiver is an officer of the court, and his possession is the possession of the court; and the expenses of the receivership, as between the parties, are disbursements, and these payments are to be provided for in the same manner as other disbursements. The receiver having been appointed on the petition of respondent to preserve the property for the benefit of respondent, as between respondent and petitioner in this proceeding, respondent is liable for the payment of the expenses of the receivership: High on Receivers, § 2; 20 Am. & Eng. Enc. Law (1 ed.), pp. 13, 14; *Musser* v. *Good*, 11 Serg. & R. 247; *Tillman* v. *Wood*, 58 Ala. 578; *Howe* v. *Jones*, 66 Iowa, 156; *Cutter* v. *Pollock*, 4 N. D. 205 (25 L. R. A. 377, 59 N. W. 1062).

The amounts sought to be recovered here are necessary expenses incurred at the instance of respondent, and respondent is liable in the first instance: 4 Am. & Eng. Enc. Law (1 ed.), p. 326; *Weston* v. *Watts*, 45 Hun. 219; *French* v. *Gifford*, 31 Iowa, 428; *Johnson* v. *Garrett*, 23 Minn. 565.

The general rule as to costs, both at law and in equity, is that they shall be adjudged to the successful

and against the unsuccessful party: *Radford* v. *Folsom*, 55 Iowa, 276.

The fact that respondent and defendants are great corporations will not change the rules of law applicable to the liability of either of them to pay costs. Supposing, for instance, that a suit is instituted to foreclose a chattel mortgage on two hundred head of cattle, the mortgage not providing the manner of foreclosure, and the complaint charging that the mortgager with neglect and with permitting the stock to perish for want of suitable feed. A receiver is appointed at plaintiff's request and he has to buy feed and care for the stock, and on a sale the stock does not sell for enough to pay charges. Who would be liable? We think any one would say that the plaintiff in the suit would have to pay all expenses, and that he could have a judgment over against the defendant. In a case like the above we think there would be no question raised as to plaintiff's liability. Yet that is in substance the same as what we now have before the court.

In this suit respondent wanted the property cared for, for its ultimate benefit. It asked the court to take charge of and manage this property for its use. It encouraged the court in incurring the present obligations and now leaves the matter for the court to worry with.

Trustees under railroad mortgages have an inherent equitable right to be reimbursed all expenses reasonably incurred in the execution of the trust and for such expense they have a lien upon the trust property. This right goes even further than this, for if the trust property prove insufficient to reimburse the trustees for their proper expenses and reasonable

compensation, they may call upon the bondholders in whose behalf the trust was created, to pay them. In the case of *Tome & Hambleton* v. *King & Sterling*, 64 Md. 166–184, it is said: "If the fund in court be not sufficient to afford adequate compensation and indemnity to the receivers, the parties at whose instance they were put upon the property should be required to provide the means of payment." In this case the property did not sell for enough to pay receiver's charges. Where the business of the receiver is to manage the property, as a railway, and keep it a going concern, he is regarded more properly as a trustee for the parties: Jones on Railroad Securities, § 547; *Tome* v. *King*, 64 Md. 166; *Vermont R. R. Company* v. *Vermont Central R. R. Company*, 50 Vt. 500; *Langdon* v. *Vermont R. R. Company*, 54 St. 593; *Rensselaer Southern R. R. Company* v. *Miller*, 47 Vt. 146; *McLane* v. *Placerville R. R. Company*, 66 Cal. 606.

Allowances may be made from time to time during the receivership: *Special Bank Commissioners* v. *Franklin Institution for Savings*, 11 R. I. 557.

This proceeding is the same as that sanctioned in the following cases: *Mitchell* v. *Downing*, 23 Or. 448; *Schneider* v. *Sears*, 13 Or. 76; *City Bank* v. *Tucker*, 7 Colo. 220; Hill's Ann. Laws, §§ 554, 555; *Cutter* v. *Pollock*, 4 N. Dak. 205 (25 L. R. A. 377).

For respondent there was an oral argument by *Mr. H. C. Watson*, with a brief over the names of *Turner, McClure & Rolston* and *John Rodell Bryson*, to this effect.

The commission and expenses of a receiver must be paid out of the fund, and cannot be taxed against the complaint: *Hembree* v. *Dawson*, 18 Or. 474.

When the fund is not sufficient to pay these debts, no one of the parties can be said to be benefited by the receivership, unless, indeed, it be those very claimants, whose rights arose out of the receivership, but for whose existence they would have had no claims: *Quincy R. R. Company* v. *Humphreys*, 145 U. S. 97; *Texas R. R. Company* v. *Rust*, 17 Fed. 275; *Central Trust Company* v. *Wabash R. R. Company*, 23 Fed. 863; *Ames* v. *Union Pacific R. R. Company*, 60 Fed. 966; *New York & Pennsylvania R. R. Company* v. *New York & Western R. R. Company*, 58 Fed. 278.

The character of receivers is really two-fold: Firstly, they take charge of the property, to hold it pending the litigation. In this respect, they resemble a sheriff, and their custody is in the nature of an equitable execution. Secondly, they operate the property, as the railroad company would have had to do, for the protection of the rights of public and parties alike. In this latter respect, their position is peculiar. They are *sui generis*, and so are their contracts: *Vanderbilt* v. *Central Railway Company*, 43 N. J. Eq. 669.

Their debts incurred in the operation of the property are chargeable as a lien upon it: *Wallace* v. *Loomis*, 97 U. S. 162. But beyond the giving to these receivers' debts a lien upon the property, the court cannot go: *Galveston R. R. Company* v. *Cowdrey*, 78 U. S. (11 Wall.), 459; *Dow* v. *Memphis R. R. Company*, 124 U. S. 652; *Union Trust Company* v. *Illinois Midland Railway Company*, 117 U. S. 460; *Kneeland* v. *Am-*

*erican Loan Company,* 136 U. S. 89; *Myer* v. *Western Car Company,* 102 U. S. 1; *Farmers' Loan Company* v. *Central R. R. Company,* 7 Fed. 538, 17 Fed. 758; *Turner* v. *Peoria R. R. Company,* 95 Ill. 134 (35 Am. Rep. 144); *State* v. *Edgefield R. R. Company,* 6 Lea, 353; *Davis* v. *Gray,* 83 U. S. (16 Wall.), 218; *Booth* v. *Clark,* 58 U. S. (17 How.), 331; *Corey* v. *Long,* 43 How. Pr. 498; *Devendorf* v. *Dickinson,* 21 How. Pr. 276.

Mr. Justice Bean, after stating the facts, delivered the opinion of the court.

This is, so far as we can ascertain, the first recorded instance in the judicial history of railroad receiverships in which the trust fund was insufficient to pay the employees of the receiver engaged in the operation of the road; and hence we are unaided in the determination of the question before us by any judicial decision directly in point. The contention of the petitioners seems to be that a receiver of a railroad appointed in a suit to foreclose a mortgage on the road, and clothed with authority to operate it, is as much the representative of the plaintiff as a sheriff who levies upon property under a writ of attachment, and that the operating expenses incurred by him are costs or fees of the litigation, and, like the fees of the sheriff in the case referred to, are collectible from the plaintiff. But this argument is based upon an entire misapprehension of a railroad receiver's position and duties. He is not, like a sheriff in an attachment action, the agent of the plaintiff in the litigation, nor does the plaintiff have any control or authority over him whatever. He is agent and executive officer of

the court, which, by virtue of its high prerogative powers, lays its judicial hand upon the property which is the subject of controversy and controls and operates it for the use and benefit, not of either of the parties to the litigation, but for the public and whomsoever in the end it may concern. His acts and possession are the acts and possession of the court. His contracts and liabilities in contemplation of law are the contracts and liabilities of the court. The parties to the litigation have not the least authority over him; nor have they any right to determine what liabilities he may or may not incur. His authority is derived solely from the act of the court appointing him, and he is the subject of its order only. "A receiver of a railroad," says Mr. Justice CALDWELL, "is a person appointed to receive and preserve the property of a railroad company, and is clothed with authority to operate the railroad and receive the earnings and income therefrom during the pendency of the foreclosure suit. In contemplation of law, the railroad is in the custody of, and operated by, the court appointing the receiver. The receiver is the agent of the court. He is an officer of the court, and his possession of the property is the possession of the court. He is not the agent of either party to the suit, and neither party is responsible for his contracts or for his malfeasance or misfeasance in office. * * * The liabilities incurred by the receiver in the operation of the road are, strictly speaking, the liabilities of the court appointing the receiver:" 30 Am. L. Rev. 161. And in *Quincy Railroad Company* v. *Humphreys*, 145 U. S. 82, the court, speaking of the Wabash receivers, said:

"They were ministerial officers appointed by the court of chancery to take possession of and preserve, *pendente lite*, the fund or property in litigation; mere custodians, coming within the rules stated in *Union National Bank* v. *Bank of Kansas City*, 136 U. S. 223, 236, where this court said: 'A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title, or even the right of possession in the property.' "

So, also, in the case of *New York & Pennsylvania R. R. Company* v. *New York & Erie R. R. Company*, 58 Fed. 268, it is said: "Receivers are but officers and agents of the court. While necessarily much is committed to their judgment and discretion, yet their power depends upon the decrees and directions of the courts appointing them. Receiverships of railroad properties are in a large part peculiar appointments. Railroads, as public carriers, are charged with great public duties, and the public are interested that their operation shall be continuous. Creditors are likewise interested that there shall be no cessation in their maintenance as going concerns, because their value as property depends upon the active use of the line." These considerations have developed the present well settled proposition that such receivers are the mere custodians of the property, and hold for and as mere agents of the court. Speaking of the character of such

trustees, and the effect of such holding upon the interests procuring the appointment, Chief Justice Waite said: "The possession taken by the receiver is only that of the court, whose officer he is, and adds nothing to the previously existing title of the mortgagees. He holds, pending the litigation, for the benefit of whomsoever in the end it shall be found to concern, and in the meantime the court proceeds to determine the rights of the parties upon the same principles it would if no change of possession had taken place: *Fosdick* v. *Schall*, 99 U. S. 251; *Quincy R. R. Company* v. *Humphreys*, 145 U. S. 82. A receiver represents no particular interest or class of interests. He holds for the benefit of all who may ultimately show an interest in the property. He stands no more for the creditor than the owner. They are not assignees, and the principles of common law applicable to assignees do not define or determine the character of a receiver's possession, or its effects upon the rights of those interested in the property in their possession. Receivers ought not to be appointed to represent the peculiar interests of one class." To the same effect, see *Texas Railway Company* v. *Rust*, 17 Fed. 275; *Central Trust Company* v. *Wabash R. R. Company*, 23 Fed. 863; *Ames* v. *Union Pacific Railroad Company*, 60 Fed. 966; and *Union Trust Company* v. *Illinois Midland R. R. Company*, 177 U. S. 455.

A railroad receiver is therefore more than a mere custodian of the property, like a sheriff holding under a writ of attachment or execution. He is, in effect, the hand of the court which holds the property while it operates the road pending the litigation for the benefit

of the general public, as well as the creditors of the insolvent corporation.   It is for this reason that the expenses of the receivership are chargeable as a lien upon the property superior to all other liens.   The plaintiff, at whose instance the receiver is appointed, thereby consents to the absolute control and management of the mortgaged property by the court and its agents and to the priority of claims for the expenses incurred in its operation and management; but it is not perceived upon what ground it can be claimed that, because the expenses of the receivership are allowed without any fault of his to exceed the value of the mortgaged property, thus entirely destroying his security, he must, in addition to the loss of his debt, be compelled to make good the deficit, unless the order of appointment was made upon that condition. He has no control over the acts of the receiver, and if, without his consent, he is to be held responsible therefor, he is liable to absolute bankruptcy and ruin.   Such a rule would render the plaintiff's position so uncertain and precarious as practically to preclude him from any protection whatever through the appointment of a receiver pending the foreclosure suit.   But the inquiry is made, "shall not a railroad mortgagee who applies for and obtains the appointment of a receiver, with authority to operate the road, be held responsible for the liabilities incurred by such officer when they cannot be made out of the property itself?" We think not, unless such responsibility was imposed as a condition to the appointment or the continuance of the receiver in office.   The appointment of a receiver in a suit to foreclose a railroad mortgage is not

a matter of strict right, but rests in the sound judicial discretion of the court; and it may, as a condition to issuing the necessary order, impose such terms as may, under the circumstances of the particular case, appear to be reasonable, and, if not acceded to, may refuse to make the order: 30 Am. L. Rev. 161; *Fosdick* v. *Schall*, 99 U. S. 235.

If, therefore, upon an application for the appointment of a railroad receiver, it appears probable that the income and corpus will prove insufficient to pay the expenses and liabilities thereof, we have no doubt that the court may require of the plaintiff, as a condition to such appointment, a guaranty of the payment of the expenses of such officer. And if, at any time after the appointment has been made, it becomes apparent to the court that it will be unable to pay and discharge the present or future liabilities incurred by its executive officer and manager, it should refuse to continue the operation of the road under the receiver, unless its expenses are guaranteed. No court is bound or ought to engage or continue in the operation of a railroad or any other enterprise without the ability to promptly discharge its obligations, and, unless it can do so, it should keep out or immediately go out of the business. But, unless such terms are imposed as a condition of the appointment or continuation in office of the receiver, his employees must look to the property in the custody of the court and its income for their compensation. They have no claim whatever on any of the parties to the litigation. They are the employees and servants of the court, and not of the parties. Their wages are in no sense costs of the liti-

gation; and, although incurred during the progress of the suit, they are not incurred in the suit. They are neither expenses of the plaintiff, nor of the defendant, and are not fees or costs which can be charged against the successful party to the litigation, as is sought to be done in this case. It follows that the order appealed from must be affirmed, and it is so ordered.

AFFIRMED.