CHAPMAN v. ATLANTIC TRUST CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 10, 1902.)

No. 777.

1. CIRCUIT COURT OF APPEALS—JURISDICTION—JURISDICTIONAL QUESTIONS.

An order entered by a circuit court on the coming in of the final report of a receiver appointed by it in a foreclosure suit, denying the petition of the receiver, praying for a settlement of his accounts, and to have certain costs and expenses of the receivership adjudged against the complainant because of the insufficiency of the proceeds of the mortgaged property to pay the same, does not involve any question of jurisdiction, and an appeal therefrom lies to the circuit court of appeals, although such order was based on the ground that the court was without authority to require complainant to pay such costs and expenses.

2. APPEALABLE ORDERS—FINALITY.

Such an order, which involved a refusal by the court to settle the receiver's accounts, which had been left open for future adjustment by the decree confirming the sale of the mortgaged property, was final, and the receiver was entitled to appeal therefrom.

3. RECEIVERS—COSTS OF RECEIVERSHIP—POWER TO ADJUDGE AGAINST COMPLAINANT.

Where the costs and expenses of the management of mortgaged property by a receiver, authorized by the court, exceed the proceeds of the property when sold, together with its earnings, and the court has expressly retained jurisdiction over the subject-matter and the parties until the final settlement of the receiver's accounts, it has power on such settlement to render judgment for the deficiency against the complainant, at whose instance the receiver was appointed and continued, and the expenses were incurred.

Appeal from the Circuit Court of the United States for the Northern District of California.

Fox & Gray, for appellant.

J. J. Scrivner, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. In this suit, which was brought by the trustee of certain bonds issued by the defendant Woodbridge Canal & Irrigation Company, of the face value of $1,000 each, bearing interest at the rate of 6 per cent. per annum, for the foreclosure of a mortgage given upon the property of the company as security for their payment, a receiver was appointed by the court at its beginning, who took possession of the property, consisting in part of an irrigation system, and continued its operation pending the litigation, and until the confirmation of its sale made under a decree of foreclosure and sale which was entered in the suit on the 18th day of September, 1897. That decree adjudged the principal and interest of the bonds to be due and payable to the trustee, and further adjudged that there was then due, owing, and unpaid, for and on account of the costs and expenses of the foreclosure of the mortgage and the manage-

¶ 1. Jurisdiction of circuit court of appeals, see notes to Lau Ow Bew v. U. S., 1 C. C. A. 6; Emigration Co. v. Gallegos, 32 C. C. A. 475.

ment and care of the property pending the suit, the complainant's costs, taxed at the sum of $———; and also: (a) To E. C. Chapman, the receiver, for and on account of advances made by him in the administration of the property pending the suit, "the sum of $6,605.72, less $3,500 now here paid thereon." (b) Also certain named sums, aggregating a large amount, due as of that date upon receiver's certificates duly issued by the receiver under the authority of the court, with interest upon the principal sum named in each of said certificates from the date of the final decree until paid at the rate of 10 per cent. per annum. (c) Also certain named sums, aggregating a large amount, adjudged to be then due certain named persons or their assignees upon time checks issued by the receiver for and on account of expenses incurred by him during his administration of the property. (d) Also certain specified sums, aggregating $2,269.85, adjudged to be then due to certain named parties or their assignees "for and on account of work done and material and board furnished for men; the same having been performed and furnished for the said receiver, and for which no time checks or certificates have been issued." And next adjudging and decreeing that there be allowed and paid out of the proceeds of the sale of the property therein ordered, "as and for the further costs and expenses of this suit and of the care and management of the property pendente lite, the following sums, to wit: (e) To E. C. Chapman, receiver, as and for his compensation for his services as such receiver from the date of his appointment to the 1st day of October, 1897, the sum of $9,000. (f) To Messrs. Fox & Gray, as and for their compensation as counsel for said receiver, the sum of $9,000. And further adjudging and decreeing that "next after the payment of the sums hereinbefore mentioned, and before the payment of any sum for or on account of the principal or interest of any of the bonds so issued," there be allowed and paid out of the proceeds of said sale, as and for claims accrued against the Woodbridge Canal & Irrigation Company between November 3, 1893, and October 3, 1894, for expenses of operating the canal system, and necessary for keeping the same a going concern—

"And now here adjudged and decreed to be a prior lien upon said property, the following sums, to wit: (g) [Setting out the names of the various parties to whom the respective sums are adjudged, together with the amounts thereof.] (h) To W. C. Pidge for services rendered between October 13, 1893, and October 1, 1894, as civil engineer, and adjudged to be a prior lien upon said property, the sum of $1,801.37. (i) To F. C. McClelland, on behalf of himself and as assignee of others, as set forth in his petition filed in this cause for services rendered in keeping the canals in a proper state of repair, the sum of $922.12. (j) It is further ordered, adjudged, and decreed that, next after the payment of the sums hereinbefore mentioned, there be paid to Messrs. Scrivner & Schell and John B. Hall, solicitors for plaintiff in said cause, the sum of $9,000. (k) To E. P. Cole and ———, solicitors on behalf of Buell & Co. and other interveners, holders of twenty-six of the bonds so issued as aforesaid, the sum of $2,000."

And the decree further adjudged that:

"After the payment of the several sums hereinbefore mentioned, and not before, there be allowed and paid to the owners and holders of each of the several bonds hereinafter mentioned, upon the surrender thereof with the

relative coupons attached, the sum of $1,210 on each of said bonds, with interest on the sum of $1,000 of the moneys so due upon each of said bonds from the 1st day of September, 1897, to the date of payment, at the rate of six per cent. per annum, if the proceeds of said sale after the payment of the costs of sale and of the costs of suit, and of the several sums mentioned in subdivision 'a' to and including subdivision 'k,' shall be sufficient to pay in full the ninety-four bonds now here presented; otherwise that each of the seventy-nine bonds mentioned in this paragraph of this decree be paid pro rata in the proportion that the amount herein allowed upon each of said bonds bears to the whole amount of the fund so applicable to the payment thereof."

The final decree contained the further provision that "at such sale no bid shall be accepted for a less sum than $120,000," with a subsequent provision declaring that "this decree is given and made subject to modification by the court at any time before final confirmation of sale, as to the upset or minimum price at which said sale may be made."

The provision specifying the limitations must subsequently have been modified, for in the decree confirming the sale, which was entered on the 15th day of August, 1898, it is recited that the commissioner appointed by the court to make the sale several times offered the property for sale in the mode and manner required by law, and in pursuance of the decree of sale, and having reported to the court the bids made in those proceedings, all of which were by the court rejected, and the matter having been again referred to the commissioner under order of the court, duly made, with instructions to again offer the property for sale after giving the required notice, and the commissioner having reported to the court his proceedings under that order, and all bids offered for the property thereunder, and the same having come on for hearing before the court on the 25th day of July, 1898, and having been continued from time to time until the 8th day of August, 1898, at which time all parties in interest were present by their respective counsel, and it being made to appear that at the time and place appointed for said sale the property had again been offered for sale in the manner required by law, and in pursuance of the orders of the court in that behalf made—

"Two bids had been made therefor, viz., one by Franklin Davis, of $11,000 in gold coin, and twenty per cent. thereof deposited in gold coin with the said commissioner, accompanied with an agreement by said Franklin Davis that in case said bid was accepted by the court, and sale confirmed to him thereon, he would pay in the balance of said sum of $11,000 in gold coin, or, in default thereof, forfeit the said deposit so made, and another by E. C. Chapman, the receiver, of $22,350, payable as follows: By amount of claims of receiver, as allowed in and by the decree of foreclosure, $12,105.72; by amount of claims of Fox & Gray, counsel for receiver, as allowed in and by said decree, $9,039.43; balance to be paid in coin, $2,354.85; making a total of $23,500. Said bid subject to a lien upon the property for all further claims fixed by the decree and allowed as and for receiver's certificates and expenses incurred by the receiver in said cause, and upon which bid the said E. C. Chapman had deposited the sum of $470.97 in cash, as and for twenty per cent. upon that part of said bid which was to be paid in cash, with an agreement that in case such bid was accepted, and confirmed by the court, he would make the same good, or in default thereof forfeit the sum so deposited."

The decree of confirmation further recites that exceptions filed to each of those bids came on for consideration, and after argument

the bid of Chapman was withdrawn, and that thereupon, upon motion of counsel, and with the consent and approval of all the parties in interest in the cause, the court consented to receive further bids in open court; and thereupon W. B. Bradbury and E. F. Card made and filed a bid in open court of the sum of $12,000 in gold coin, and deposited 20 per cent. thereof, with an agreement that in case their bid was accepted they would pay in the balance thereof, or, in default of such payment, would forfeit the 20 per cent. so deposited, and that Charles N. Fox made and filed a written bid, signed by himself, in words and figures as follows:

"Now comes the undersigned, and bids and offers for the property offered for sale in this cause, and described in the decree of foreclosure heretofore entered herein, the sum of twenty-one thousand dollars; certificates, assignments, and conveyances thereof to be made to and in the name of G. Howard Thompson, and payment of the amount so offered and bid to be made as follows: (1) Nine thousand dollars thereof by the filing and entry of good and sufficient satisfaction and discharge of the allowance made in and by the said decree in favor of E. C. Chapman, receiver, as and for his compensation as receiver in said cause. (2) Nine thousand dollars thereof by the filing and entry of good and sufficient satisfaction and discharge of the allowance made in and by the said decree of foreclosure in favor of Fox & Gray, as and for compensation for their services as counsel for said receiver. (3) Three thousand dollars thereof in gold coin of the United States.
"[Signed]                                            Chas. N. Fox."

The decree of confirmation further recites that thereupon the further hearing of the matter was continued until August 10, 1898, at which time the hearing was resumed, when—

"Mr. Fox asked leave to substitute for the bid signed and filed by him on August, 8, 1898, a duplicate thereof signed by said G. Howard Thompson in person; and, leave being granted, a duplicate of the bid hereinabove last quoted, signed by the said G. Howard Thompson instead of by said Chas. N. Fox, was presented and filed, and substituted for the bid so signed by Chas. N. Fox, and with it was presented and filed, subject to acceptance and confirmation of said bid of said G. Howard Thompson, to be returned in case said bid should not be accepted and confirmed, a receipt in full for the said sum of nine thousand dollars, the allowance made in and by the said decree of foreclosure in favor of said E. C. Chapman, as and for his compensation as receiver in said cause, and also in full of the said sum of nine thousand dollars, allowance made in and by the said decree of foreclosure in favor of Fox & Gray, as and for their compensation for their services as counsel for said receiver, which receipt was signed by the Bank of California, by its assistant cashier, also by the said E. C. Chapman and by the said Fox & Gray; and with the said papers was also deposited, subject to acceptance and confirmation of said bid, to be returned in case the same was not accepted and confirmed, a certified check, covering the amount of the cash portion of said bid and one thousand dollars in excess thereof, also two hundred dollars in gold coin of the United States, making the total of said deposit of check and coin of $4,200, being equal to twenty per cent. upon the total amount of the bid so made as aforesaid, and accompanying the same with a written agreement made by said E. C. Chapman and Fox & Gray, who made said deposit of check and cash, that in case said bid of said G. Howard Thompson was accepted and confirmed according to the terms thereof, and default be made in complying with the terms thereof on the part of said G. Howard Thompson, then the full amount of said $4,200 so deposited in check and cash should be forfeited; otherwise three thousand dollars thereof to be used in complying with the terms of said bid, and the remaining $1,200 thereof to be returned to them."

The decree of confirmation further recites that "said Franklin Davis also made a second bid, in the sum of $12,500 in gold coin of the United States, with an agreement in writing to forfeit twenty per cent. thereof in case said bid was not made good, if accepted and confirmed, and deposited a certified check more than sufficient to meet the said twenty per cent. upon said bid," and further recites that, exceptions having been taken to the acceptance and confirmation of each of the bids, the same were argued and submitted, whereupon the court rejected the bids of Davis and of Bradbury and Card.   The decree of confirmation then recites that:

"It appearing to the court that the said sums of nine thousand dollars allowed and decreed, in and by said decree of foreclosure, to be paid to the said E. C. Chapman, receiver, as and for his compensation as receiver, and of nine thousand dollars allowed and decreed, in and by the said decree of foreclosure, to be paid to Fox & Gray as and for their compensation as counsel for said receiver, are costs of court, entitled to priority of payment out of the proceeds of such sale next after the costs of sale; and it further appearing that no higher or better bid has been or can be secured for said property, it is by the court further ordered, adjudged, and decreed that the bid so made by the said G. Howard Thompson be, and the same is hereby, accepted, according to the terms thereof, and that said property be struck off and sold to him therefor; that satisfaction and discharge of so much of said decree of foreclosure as provides that the sum of nine thousand dollars be allowed and paid to said E. C. Chapman as and for his compensation as receiver, and of so much thereof as allows and decrees that the sum of nine thousand dollars be allowed and paid to Messrs. Fox & Gray as and for their compensation for services as counsel for said receiver, and the said sum of three thousand dollars in gold coin, for which check was deposited as aforesaid, be accepted in satisfaction of said bid, and thereupon the balance of the money so deposited on behalf of said G. Howard Thompson, to wit, the sum of $1,200 so deposited to make up the twenty per cent. of the entire bid, required as security that the said bid would be made good, be thereupon returned to the parties making the deposit aforesaid."

And further decreeing that the commissioner appointed to make the sale execute to Thompson the proper certificates and assignments of the property, and that, in case redemption be not made of the property from such sale within six months from the 10th day of August, 1898, the commissioner execute to the purchaser good and sufficient deeds of conveyance of all the property so sold, and that upon presentation of such conveyances, and demand made therefor, the receiver deliver over possession of all the property so sold and conveyed to the purchaser or his assigns.

The decree of confirmation further adjudged that out of the money arising from such sale—

"The clerk pay the costs of advertising and sale, including the compensation allowed to the commissioner for making such sale, as fixed and established in said decree of foreclosure; the fees of the master on the reference made to him to examine and report upon the receiver's report of receipts and expenses prior to the entry of said decree; the clerk's accruing costs and commissions; and that he apply and pay the balance, if any there be, in payments pro rata on the receiver's certificates mentioned and provided for in said decree of foreclosure; such payments to be applied first to the accrued interest on said certificates, respectively, and, if more than sufficient to pay such accrued interest, then on account of the principal of such certificates respectively; and that said clerk report to this court the balance then due and remaining unpaid for or on account of any of the fees of officers or

appointees of this court, or of advances made by them or either of them, and for or on account of receiver's certificates or time checks or other expenses of the administration of said receiver, as the same are fixed, established, and allowed in and by the said decree of foreclosure, for the further consideration and action of this court thereon; and also that the said receiver report to this court, and render an account of his receipts, disbursements, and expenses in the management and care of said property between the date of sale and decree of foreclosure and the date of sale, and transfer of possession thereunder, for examination and settlement."

The decree of confirmation concluded with the express provision—

"That jurisdiction of this cause and the parties thereto be, and the same is hereby, retained by the court, until redemption is made or title deeds have passed as herein provided, and until the coming in of the reports of the said clerk and receiver herein provided for, and the final action of the court thereon, and the final payment of the balance of the costs and expenses of this court and its officers, and of the advances made and indebtedness incurred by said receiver, which have been or may be allowed by the court, in the management and care of the property placed in his charge, or until the further and final order of the court in that behalf."

Pursuant to the requirements of the decree of confirmation, the clerk of the court on the 7th day of September, 1898, filed the following report:

"Report of Clerk Pursuant to Decree of August 15, 1898.

"To the Honorable William W. Morrow, United States Circuit Judge: In obedience to the decree of confirmation of sale, filed August 15, 1898, I respectfully report that the following payments have been made from the proceeds of sale under decree of foreclosure:

| | | |
|---|---:|---:|
| Proceeds of sale | | $21,000 00 |
| The receiver for his compensation | $ 9,000 00 | |
| Messrs. Fox & Gray, as attorney's fees | 9,000 00 | |
| E. H. Heacock, commissioner, etc | 500 00 | |
| E. H. Heacock, master, etc | 50 00 | |
| Advertising bills | 1,737 60 | |
| Stenographer's fees | 20 00 | |
| Clerk's costs | 201 70 | |
| Pro rata payment on the accrued interest on the receiver's certificates | 490 70 | |
| | $21,000 00 | $21,000 00 |

"I further report that of the amounts found due by the decree of foreclosure of September 18, 1897, there remains still unpaid:

| | |
|---|---:|
| Receiver's certificates | $12,292 47 |
| E. C. Chapman, Esq., receiver, for advances made by him, care and management of the property | 3,105 72 |
| Time checks issued by receiver | 5,728 89 |
| Work done and material furnished for said receiver, for which no time checks or certificates have been issued | 2,269 85 |
| Expenses operating canal system | 5,728 54 |
| W. C. Pidge | 1,801 37 |
| F. C. McClelland | 922 12 |
| Scrivner & Schell and John B. Hall | 9,000 00 |
| E. P. Cole | 2,000 00 |
| | $42,848 96 |

"Respectfully submitted,                     Southard Hoffman,
"Clerk United States Circuit Court, Northern District of California.
"September 7, 1898."

And on the 3d day of August, 1899, nearly one year after the above report of the clerk, the receiver filed in the cause his "final report and petition." In that report the receiver starts out by referring to the entry of the decree of foreclosure and sale, and the appointment of a commissioner to make the sale, and recites that:

"Although the most diligent effort was made, and a large expense incurred, in trying to effect a sale, no sale was finally made of the property at a price satisfactory to either the parties in interest or the court until the 10th day of August, 1898, when the property was struck off and sold to G. Howard Thompson for the sum of $21,000, that being the highest and best bid made therefor; and decree of confirmation of such sale, subject to redemption within six months, as provided by the laws of the state, was duly given and made on the 15th day of August, 1898, and certificates of such sale duly executed and delivered and filed."

The report of the receiver further states that from the date of the decree to the date of the sale and its confirmation, and the issue of the certificate of sale thereunder, it was necessary that the receiver should, and that he did, remain in full and absolute charge and possession of the property, and that, although he did not attempt during that period to keep it "a going concern, as he had theretofore done," it was necessary for him to give, and that he did give, the matter his personal attention from time to time, and made three visits of inspection to the property, at an expense of $47.40, actually paid out by him, and that it was also necessary during the whole of that time, in order to preserve the property, that the receiver should keep, and that he did keep, three men employed for 12 months, at a cost of $75 a month each, one of whom was employed at the headquarters of the works, at Woodbridge, and the other at the upper water right, in Calaveras county; that he also necessarily incurred further expenses in the care and management of the property during that period, as shown in his account embodied in the report; that during all the same period his counsel was engaged and was frequently consulted by the receiver upon questions of law which arose in the conduct and management of the business, and in that behalf prepared and filed many papers in the case, and had and attended many hearings and arguments before the court in the matter of the receivership. Succeeding the foregoing statements of the report of the receiver is the following:

"Pending the sale of such property, and on the 1st of February, 1898, under authority given by order of court made on that day, I sold and assigned a note and mortgage given by Thomas E. Jones to the said Woodbridge Canal & Irrigation Company, dated June 25, 1894, for the sum of $500 cash, which I received, out of which I returned the sum of $175, money which I had received on account of interest on another mortgage which had come into my possession as receiver, and which I had supposed belonged to the assets of the Woodbridge Canal & Irrigation Company at the time of making my former report in this cause, but which had in fact been assigned and transferred by the Woodbridge Canal & Irrigation Company before my appointment as receiver, leaving a balance of the moneys so received by me of $325. Since my last report I have paid out to and for F. C. McClelland, on account of services rendered by him, the sum of $772, leaving a balance of $128 still due him on account of services so rendered since my last report, and in addition to the sum of $300 due to him for services prior to my last report, and allowed in and by the decree of foreclosure entered herein. My disbursements and receipts since the date of my report upon which the said decree was based have been as follows:

Disbursements:

Interest erroneously collected, as above stated................. $  175 00
Paid F. G. McClelland on account of services rendered........       772 00
Paid costs and expenses of witnesses before the commissioner
  on settling my former account................................        35 00
Paid expenses of three trips made by myself to the works......        .47 40

  Total ...................................................... $1,029 40
Receipts ...................................................       500 00

Which, being deducted from my disbursements, leaves balance
  due on account of expenses.................................. $  529 40

"There is also a balance due to said F. G. McClelland on account of services rendered since my last report of $128, and also due J. J. Hinckley for services since my last report of $900. To these should also be added such reasonable sum as the court shall deem to be just for my services as receiver for the period of twelve months from the date of my last report. And also to my counsel, Chas. N. Fox, such reasonable sum as to the court shall deem proper and just for his services during the same period.

"It also appears from the report of the clerk of this court, made in pursuance of the order of confirmation of such sale, that there is a deficiency on account of the expenses and costs incurred by the receiver prior to the entry of said decree of foreclosure, and which were allowed and established by the said decree, in the following sums, to wit:

On account of receiver's certificates outstanding.............. $12,292 47
In favor of this receiver for advances........................    3,105 72
On account of time checks issued by receiver, and now out-
  standing ....................................................    5,728 89
On account of work done and material furnished for which no
  time checks or receiver's certificates were issued...........    2,269 85

"Of this amount, the sum of $10,265.15 (being the principal due upon said receiver's certificates) bears interest at the rate of ten per cent. per annum from the date of said decree, and the balance of said several sums bears interest at the rate of seven per cent. per annum from the date of said decree."

The report of the receiver next avers—

"That each and all and every of the foregoing items of expenditure and of the several sums of money hereinbefore mentioned are costs and expenses of this court and its officers necessarily incurred in the prosecution of said action, and for which the plaintiff in said action is primarily reliable [liable] under the laws of the United States and of the state of California, and the rules and practice of the court; that they were incurred on the motion and the request of the said plaintiff; that of right they should have been paid in advance by the said plaintiff, but upon the assurance of said plaintiff that the property against which it was seeking to foreclose was amply sufficient to pay all the costs and expenses so incurred, and the whole amount of the indebtedness for which said action was brought, they were not so paid, but were left to be paid out of the funds arising from the sale of said property; that the proceeds of such sale were wholly insufficient to pay even the costs and expenses of the court in that behalf; and that after applying the proceeds of sale to the satisfaction of the costs and expenses of sale, and of the compensation allowed to the said receiver and his counsel in and by the said decree of foreclosure, as authorized by the court, the amounts hereinbefore stated remain still unpaid and entirely unsatisfied."

The report and petition of the receiver also contained certain allegations intended and tending to show that the suit was originally commenced without legal right and by collusion between the complainant trustee and the defendant Woodbridge Canal & Irrigation Company.

The prayer of the receiver is—

"That the balance due him on account of his receipts and disbursements since the making of said decree, and also the balance due to his employés, as hereinbefore stated, since the making of the report upon which said decree was based, and the compensation to be allowed to the said receiver and to his counsel since the date of said decree, be fixed and established by this court, and that judgment be entered in favor of this receiver or of the clerk, or such other officer of the court as the court shall direct, against the plaintiff in this cause, for the full amount of the deficiency hereinbefore stated, with the sums so allowed for services and expenses since the date of said decree, and that the proper process of court be issued for the collection thereof from plaintiff, and that when collected the same be paid into court, to be by the court disbursed to the several persons entitled thereto."

Upon the filing of the report and petition of the receiver, the court made an order on the complainant to show cause at a designated time—

"Why the amount due to the receiver and his employés under his final report should not be settled and allowed, and why judgment for the total amount of such deficiency, when ascertained, should not be entered against the said Atlantic Trust Company, plaintiff in said cause, and why said plaintiff should not be required to pay the same into court, as in the said petition prayed."

The complainant appeared in answer to the order to show cause, and filed a demurrer to the report and petition of the receiver, upon the grounds, among others, that the court was without jurisdiction to grant the relief prayed for, and that neither the report nor the petition stated facts sufficient to justify the court in granting the relief prayed for. After argument, the petition and demurrer were submitted to the court below, in deciding which the judge said:

"I am of the opinion that provision should have been made when this suit was commenced, or at the time when the receiver was appointed, for the payment of or security for the amount of his expenses, and for the redemption of whatever certificates might be issued by him, in the event that the proceeds of the sale of the property should prove insufficient. But such provision was not made at the time by the court, and I am of the opinion that the court is without authority to do so now. In Farmers' Loan & Trust Co. v. Oregon Pac. R. Co., 31 Or. 237, 48 Pac. 706, 38 L. R. A. 424, 65 Am. St. Rep. 822, this question was fully considered, and the views there expressed are in accord with my opinion in the present case. The order to show cause will therefore be discharged."

And on the same day the following order in the matter was entered in the minutes of the court:

"In this cause the receiver's application [by order to show cause] for an order directing complainant to pay the amount due to receiver and his employés, etc., heretofore heard and submitted, having been fully considered, and the memorandum opinion of the court having been filed, it was in accordance therewith ordered that the order to show cause in this behalf issued herein be, and hereby is, discharged, and that receiver's said application be, and hereby is, denied."

The appeal is from this order.

A motion is made to dismiss the appeal, based upon two grounds: First, that, as the demurrer to the receiver's report and petition set up that the court below was without jurisdiction to grant the relief sought, it raised a question of jurisdiction, which was required to be certified to the supreme court, under the provisions of the act of congress creating this court (26 Stat. 826 [U. S. Comp. St. 1901, p. 547]); and, secondly, that the order appealed from is not a final order

or decree of the circuit court. We think it clear that there is no merit in either of these points. It is not pretended that the court below was without jurisdiction of the parties to the suit, or of its subject-matter, nor that it was without jurisdiction to appoint a receiver to take possession of and hold and operate the property pending the litigation. It follows, as a matter of course, that it had the power and that it was its duty to overlook and adjust the accounts of the receiver, and to adjudge how and when the costs and expenses of the receivership should be paid,—subject, of course, to correction, by appropriate proceedings, of any error committed in that respect. And in this case the court below, in its decree confirming the sale of the property, in express terms, retained jurisdiction of the cause for those purposes. It was in pursuance of that express provision of the decree of confirmation that the report and petition of the receiver was filed, and action thereon by the court sought; thus not only invoking a power expressly reserved in the decree of confirmation, but one of the powers of the court incident to its unquestioned jurisdiction over the parties to and the subject-matter of the suit. There is just as little merit in the contention that the order appealed from is not a final order. It is a mistake to say that by the order the court below did not refuse to settle the accounts of the receiver. The petition was for the settlement of the receiver's account, as well as for an order that the complainant in the cause be directed to pay the full amount of the deficiency shown thereby. The order to show cause directed the complainant to appear at a time and place designated, and show, if it could, why that relief should not be granted. Upon hearing and considering the matter, the receiver's application, which, as has been said, included a prayer both for the settlement of his accounts, and a judgment against the complainant for the deficiency shown thereby, was denied, and the order to show cause discharged. Nothing could more effectively and completely end the application than that order. It was final, in the strictest sense, and it was an order from which the receiver was entitled to appeal, for two reasons: First, because the account the receiver sought to have settled and allowed and ordered paid contained an unpaid balance of $3,105.72 that had been theretofore adjudged by the court to be due him on account of the expenses of the receivership; and, secondly, because it was his legal duty to exercise his powers as receiver, and see that the certificates that he had issued and sold under the authority of the court, as well as all other legitimate expenses of the receivership, be paid. We regard the decision of the supreme court in the case of Bosworth v. Railway Co., 174 U. S. 182, 19 Sup. Ct. 625, 43 L. Ed. 941, as full authority for the appeal by the receiver. The motion to dismiss is therefore denied.

. In considering the merits of the appeal, we should not be controlled or in any way influenced by the fact that the sale of the property seems to have been in reality made and confirmed to the receiver and his attorney, through Thompson, for $21,000, $18,000 of which was paid by the satisfaction of the allowance in that amount that had theretofore been made to the receiver and his attorney for their services in their respective capacities. Neither the propriety

of the confirmation of the sale so made, nor that of any other of the provisions of the decree of confirmation, is before us for consideration. That decree, including the order of payments therein specified, must be here accepted as it stands. Nor does any objection appear to have been at any time taken by the complainant to the sale or to its confirmation, or to any of the provisions of either the original decree of foreclosure and sale, or that confirming the sale. In and by the latter, as has been shown, the court below in express terms retained jurisdiction of the cause and of the parties thereto "until redemption is made or title deeds have passed, as herein provided, and until the coming in of the reports of the said clerk and receiver herein provided for, and the final action of the court thereon, and the final payment of the balance of the costs and expenses of this court and its officers, and of the advances made and the indebtedness incurred by said receiver which have been or may be allowed by the court in the management and care of the property placed in his charge, or until the further and final order of the court in that behalf." In obedience to the requirements of that decree, the report of the receiver was filed. It does not, we think, admit of question that the court should have settled the account of the receiver, and that in discharging the order to show cause, and dismissing the petition of the receiver, embracing, as has been shown, a prayer for its settlement, as well as for an order that the complainant pay the deficiency shown thereby, the court below was in error. The account filed by the receiver shows, among other things, that there remains due and unpaid on the certificates issued by the receiver under the orders of the court, and for other allowed and adjudged expenses of the receivership, a large amount of money, which fact is referred to in the opinion of the court below, but concerning which the learned judge, in discharging the order to show cause and denying the receiver's application, said:

"I am of the opinion that provision should have been made when this suit was commenced, or at the time when the receiver was appointed, for the payment of or security for the amount of his expenses, and for the redemption of whatever certificates might be issued by him, in the event that the proceeds of the sale of the property should prove insufficient. But such provision was not made at the time by the court, and I am of the opinion that the court is without authority to do so now. In Farmers' Loan & Trust Co. v. Oregon Pac. R. Co., 31 Or. 237, 48 Pac. 706, 38 L. R. A. 424, 65 Am. St. Rep. 822, this question was fully considered, and the views there expressed are in accord with my opinion in the present case."

On principle, it seems to us impossible to assign any good reason why, if the court was empowered at the time of the commencement of the suit, or at the time of the appointment of the receiver, to compel the complainant to pay into court sufficient money to cover the expenses of the receivership, or to give security for such payment, including the payment of whatever certificates might be authorized to be issued by the receiver, the court has not precisely the same power to adjudge, upon the settlement of the receiver's account, that the complainant make good any deficiency in the matter of such expenses; having by its decree, in express terms, retained jurisdiction of the cause and of the parties thereto for the purpose of settling

the receiver's account, and ordering paid the costs and expenses of the receivership. The case of Farmers' Loan & Trust Co. v. Oregon Pac. R. Co., 31 Or. 237, 48 Pac. 706, 38 L. R. A. 424, 65 Am. St. Rep. 822, relied upon and approved by the court below, does not commend itself to our judgment. The court there said:

"It is not perceived upon what ground it can be claimed that, because the expenses of the receivership are allowed, without any fault of his, to exceed the value of the mortgaged property, thus entirely destroying his security, he must, in addition to the loss of his debt, be compelled to make good the deficit, unless the order of appointment was made upon that condition. He has no control over the acts of the receiver, and if, without his consent, he is to be held responsible therefor, he is liable to absolute bankruptcy and ruin. Such a rule would render the plaintiff's position so uncertain and precarious as practically to preclude him from any protection whatever through the appointment of a receiver pending the foreclosure suit. But the inquiry is made, 'Shall not a railroad mortgagee, who applies for and obtains the appointment of a receiver, with authority to operate the road, be held responsible for the liabilities incurred by such officer, when they cannot be made out of the property itself?' We think not, unless such responsibility was imposed as a condition to the appointment or the continuance of the receiver in office. The appointment of a receiver in a suit to foreclose a railroad mortgage is not a matter of strict right, but rests in the sound judicial discretion of the court; and it may, as a condition to issuing the necessary order, impose such terms as may, under the circumstances of the particular case, appear to be reasonable, and, if not acceded to, may refuse to make the order. 30 Am. Law Rev. 161; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339. If, therefore, upon an application for the appointment of a railroad receiver, it appears probable that the income and corpus will prove insufficient to pay the expenses and liabilities thereof, we have no doubt that the court may require of the plaintiff, as a condition to such appointment, a guaranty of the payment of the expenses of such officer. And if, at any time after the appointment has been made, it becomes apparent to the court that it will be unable to pay and discharge the present or future liabilities incurred by its executive officer and manager, it should refuse to continue the operation of the road under the receiver, unless its expenses are guarantied. No court is bound or ought to engage or continue in the operation of a railroad or any other enterprise without the ability to promptly discharge its obligations, and unless it can do so it should keep out or immediately go out of the business. But unless such terms are imposed as a condition of the appointment or continuation in office of the receiver, his employés must look to the property in the custody of the court and its income for their compensation. They have no claim whatever on any of the parties to the litigation. They are the employés and servants of the court, and not of the parties. Their wages are in no sense costs of the litigation, and, although incurred during the progress of the suit, they are not incurred in the suit. They are neither expenses of the plaintiff nor of the defendant, and are not fees or costs which can be charged against the successful party to the litigation, as is sought to be done in this case."

The party who asks for the appointment of a receiver does so voluntarily, and because he thinks it to his interest to have the possession of the property in controversy pass into the hands and control of the court pending the litigation. It is true that the receiver, when appointed, becomes the officer of the court, and not the agent of either party to the suit, but he is appointed to serve the parties interested. He holds the property, and, when operating it, operates it for the benefit of whomsoever shall be finally adjudged to own it. But he cannot be justly held to hold it and operate it at his own expense or that of the court. Those who render services in and about the receivership are justly entitled to be paid the fair value of such services,

and when the issuance of receiver's certificates becomes necessary for the proper preservation of the property, and such certificates are authorized by the court to be issued by the receiver for money to be used for such purposes, those who buy the obligations are entitled to have them paid. How? In cases like the present, out of the property or its proceeds, certainly. No one, we apprehend, will question that. But the property having been sold for but a trifle more than the amount theretofore allowed the receiver and his attorney for their services in and about the receivership, and they credited with such allowance on their bid, who is to suffer? The complainant, at whose instance the receiver was appointed, or those who, relying upon his acts, based upon the authority and sanction of the court, invested their money and rendered their services in and about the operation and preservation of the property? It is not difficult to determine on which side of this question are the equities. With due deference, we are unable to see any force in the suggestion of the supreme court of Oregon in the case cited that, as the complainant in such a suit has no control over the receiver, if he be held liable for the expenses of the receivership, in the event the property prove insufficient to pay them, he may be bankrupted. At the same time it is conceded by that learned court that, where it appears probable that the property will prove insufficient, the court may require, as a condition to the appointment of a receiver, a guaranty of the payment of the expenses of such officer, and a like guaranty subsequently, on pain of the discharge of the receiver, when it becomes evident that the property will prove insufficient to pay the expenses. The theory of this manifestly is that in these two instances the complainant can inform himself of the probable outcome of the property, and, if he be not willing to give the guaranty, he will not secure the appointment of a receiver in the one instance, or his continuance in office in the other. But why should he not be required to inform himself, also, when no such condition is imposed by the court? Precisely the same opportunity on complainant's part, and precisely the same duty to inform himself in that respect, exists in the absence of the requirement of the guaranty mentioned. The complainant, whose lien upon the property it is sought to foreclose, in the nature of things, must and should be held to have much better information regarding the value of the property and its probable outcome than the court. Indeed, it is not easy to see how the court can be properly expected to know anything about it. The appointment of a receiver, if made at all, is usually made at the request of the complainant,—occasionally, as in the case at bar, with the consent of the defendant. If the complainant was not willing to pay the expenses of the receivership it asked for, in the event of the insufficiency of the property to do so, it should not have asked the court to make the appointment, incur the liabilities, and pledge its faith to their payment. It was the duty of the complainant to keep informed in respect to the progress of the receivership, the property, and its probable outcome, and, whenever it became unwilling to further stand good for any deficiency, to ask the court to bring to an end the business it undertook and was conducting on complainant's petition.

We are therefore of opinion that the complainant is liable for the deficiency shown by the decrees already rendered in the cause, and for such further deficiency as may be properly ascertained; and such is the decided weight of authority. See Beach, Rec. (Anderson's Ed.) § 773; Ephraim v. Bank, 129 Cal. 589, 62 Pac. 177; Pacific Bank v. Madera Fruit & Land Co., 124 Cal. 525, 57 Pac. 462; Tome v. King, 64 Md. 166, 21 Atl. 279; Howe v. Jones, 66 Iowa, 156, 23 N. W. 376; Cattle Co. v. Bindle (Tex. Civ. App.) 32 S. W. 582; Knickerbocker v. Mining Co., 67 Ill. App. 291, affirmed in 172 Ill. 535, 50 N. E. 330, 64 Am. St. Rep. 54; Bank v. Backus (Minn.) 77 N. W. 142; Mining Co. v. Schoolfield, 15 Colo. 376, 24 Pac. 1049; Cutter v. Pollock, 7 N. D. 631, 76 N. W. 235.

We are further of opinion that upon the settlement of the receiver's account, and the proper ascertainment of such further deficiency, if any, judgment may be entered agaist the complainant for the aggregate amount thereof; jurisdiction over the cause and of all of the parties having been retained by the court for that purpose. What that further deficiency, if any, properly chargeable against the complainant, may be, will be a matter for the determination of the circuit court on a settlement of the receiver's account. It is not for us to anticipate its action thereon in any respect.

Order reversed and cause remanded for further proceedings not inconsistent with this opinion.