[No. 4391.]

## THE GERMAN NATIONAL BANK OF DENVER v. J. D. BEST & CO. ET AL.

**1. Receivers—Costs—Consolidation of Actions—Jurisdiction.**

Where an action in which a receiver had been appointed was consolidated with another action and in the order of consolidation the court expressly reserved jurisdiction to hear and dispose of all matters relating to the former action, or arising out of the receivership, and reserved for future consideration the priority and rank of claims against the receiver or the party for whom he was appointed, the court had jurisdiction to render judgment in the consolidated action, against the party at whose instance the receiver was appointed in the former action, for the costs and expenses of the receivership.

**2. Receivers—Costs.**

Where a receiver and his successor had been discharged so that neither was before or under the control of the court at the time, it was not improper to render judgment directly in favor

of those who furnished supplies or rendered services to the receiver while he was acting in that capacity, instead of making such allowances to the receiver.

**3. Receivers—Mortgages—Foreclosure—Consolidation of Actions —Final Judgments.**

Where an action for debt in which a receiver was appointed for the defendant was consolidated with a subsequent action against the same defendant to foreclose a mortgage, and the order of consolidation reserved jurisdiction to hear and determine all matters relating to the former action or arising out of the receivership, and a final decree of foreclosure was entered in the consolidated action giving the mortgage lien priority over the receiver's certificates, and the decree expressly reserved for future adjudication all questions not thereby disposed of, such judgment was not a determination of any of the issues of the former action except the relative rank of the receiver's certificates, and the court had jurisdiction after the expiration of the term at which such judgment was entered to render judgment against the plaintiff in the former suit for costs and expenses of the receivership, and the fact that said plaintiff had not prosecuted its action to a conclusion did not operate to deprive parties who furnished supplies to the receiver of their right to proceed against such plaintiff for such supplies.

**4. Receivers' Certificates—Election of Remedies.**

Holders of receivers' certificates of indebtedness for supplies furnished a receiver by attempting to have their certificates adjudged a lien on funds in the hands of the receiver superior to a prior mortgage did not thereby elect between inconsistent remedies so as to prevent them from afterwards proceeding against the plaintiff at whose instance the receiver was appointed for their claims.

**5. Receivers—Notice.**

A plaintiff at whose instance a receiver is appointed is charged with knowledge of the fact that if the fund in the hands of the receiver is inadequate to defray the costs and expenses of the receivership, he is liable for such expenses, and it is not incumbent on the holders of receivers' certificates for such expenses to advise such plaintiff that they will look to him for payment.

*Error to the District Court of Arapahoe County.*

Mr. A. B. SEAMAN and Mr. H. S. SILVERSTEIN, for plaintiff in error.

13

Messrs. HODGES, WILSON & HODGES, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

This writ of error was sued out to review a judgment for defendants in error against plaintiff in error for the value of supplies furnished by the former to E. F. Bishop, as receiver, who, at the instance and request of the bank, had been appointed to that office by the district court of Arapahoe county, in an action pending therein brought by plaintiff in error against The United Coal Company. The controversy here arises out of one branch of a cause once before this court and reported under the title of *International Trust Co. v. United Coal Co.,* 27 Colo. 246. A full statement of the facts of the case will make plain the legal questions involved.

In 1894 the German National Bank of Denver brought an action in the district court of Arapahoe county against The United Coal Company to recover judgment upon an unsecured promissory note, and in its aid applied for, and secured, the appointment of a receiver, the object of the ancillary proceeding being to conserve for the benefit of its unsecured debt, which it hoped to reduce to judgment, the assets of the coal company, if any, in excess of those covered by a prior mortgage which the coal company had given to The International Trust Company as trustee to secure the payment of the mortgagor's negotiable bonds.

Mr. Bishop, as such receiver, was empowered to, and did, under the direction of the court, operate coal mines belonging to, or leased by, the coal company, of which he had taken possession, and in conducting the business incurred indebtedness for which receiver's certificates were issued.

After this receiver had conducted the business for some time and had incurred the debts which are the subject-matter of the case at bar, The International Trust Company brought its action in the same court, in which the bank suit was pending, to foreclose the mortgage of which it was trustee. Thereupon the court, apparently with the consent of all parties, consolidated the two causes of action, viz., the one by the bank against the coal company, numbered on the docket as 20,837, and the one by The International Trust Company against the coal company, No. 24,636, for trial as one action, which consolidated action was thereafter prosecuted as No. 24,636. In the order of consolidation it was recited: "The court expressly reserving jurisdiction to hear and dispose of all matters and things relating to the cause of the *German National Bank v. The United Coal Company*, or arising out of the receivership in the last-named suit, in this cause, as fully as though the said the *German National Bank v. The United Coal Company* suit had not been consolidated herewith." There was a further recital: "The court expressly reserving to itself for future consideration and determination the respective priority and rank of each and every claimant and creditor of The United Coal Company, or of the receiver, in the cause of the *German National Bank v. The United Coal Company et al.*" At the same time the receiver who was appointed in the bank suit was discharged and ordered to turn over to Mr. MacNeil, the receiver appointed in the trust company suit, and upon the qualification of the latter, Bishop did turn over to MacNeil all property of every description which had come into his possession and that belonged to the coal company.

Afterwards, and in No. 24,636, an order was made by the court allowing the claims of those who

had furnished supplies to the receiver while he was operating the coal mines under the order of appointment in the bank suit, which embraced, among other claims, those that are involved here; and in its final decree of March 28, 1898, directing a foreclosure of the mortgage of the trust company, the receiver's certificates which had been issued to these claimants were made a lien upon the previously mortgaged property prior to that of the mortgage itself. To review this decree, or a part of it, The International Trust Company, as trustee under the mortgage, sued out a writ of error in this court, and on March 5, 1900, it was reversed and set aside in so far as it made the receiver's certificates a paramount lien upon the mortgaged property, and the lower court was directed to modify its decree by making the mortgage the first lien thereon.

After the remittitur was sent down, and on May 21, 1900, the defendants in error here, who furnished the supplies to the receiver Bishop, used by him in working the coal mine, and who held receiver's certificates therefor, filed in the district court a petition in cause No. 24,636, in which they asked that the final decree of foreclosure be modified to the extent that their claims should be paid out of the proceeds of the foreclosure sale in his hands before any sum was paid to the German National Bank or its assignees who held certain of the mortgage bonds. The application seems to have been based upon the theory that since the German National Bank secured the appointment of a receiver who incurred the debts for its benefit, it should not, as holder of mortgage bonds, nor should its assigns with notice, be allowed to participate in the proceeds of the sale of the mortgaged property until after the claimants were paid, the fund being inadequate for all creditors. This petition was denied without prejudice. Afterwards,

on the 28th of May, 1900, a final order and decree of foreclosure and sale, modified to conform to the judgment of this court, was entered.

On June 11, 1900, the defendants in error filed a motion in cause 20,837, which was the number of the suit begun by the German bank against the coal company, in which motion they asked that the amount of their claim be taxed as costs against the German bank, but afterwards, on the same day, they appeared and obtained leave to withdraw this motion without prejudice. Six days later they filed a motion in No. 24,636 to vacate the decree of foreclosure of May 28, 1900, in which they claimed that the court was in error in denying their prayer for judgment against the German National Bank for the amount of their claim as costs. This motion was denied by the court, and on the next day, July 18, 1900, the defendants in error filed, in the consolidated cause No. 24,636, another motion to tax the amount of their claims as costs against the German bank. On the same day the court, by proper order, accepted the bid received for the sale of the mortgaged property, and confirmed the sale, and ordered the special master to deliver the property to the purchaser, and at the same time reserved for future consideration all questions relating to the settlement of the account of MacNeil, receiver in the trust company case, and the matter of his discharge. August 2, 1900, his final report was acted upon, his accounts were approved, and he was discharged.

On the 21st of September, 1900, there was filed in the consolidated cause a stipulation by the parties to this controversy that the petition, or motion, filed on the 18th of July, 1900, which was pending, undisposed of, when MacNeil was discharged as receiver, might be withdrawn and another petition substituted therefor in which the relief prayed was a

judgment against the bank for the amount of petitioners' claims, evidenced by receiver's certificates issued by Bishop, as receiver in the bank case, for supplies, to be taxed as costs of such receivership. To this petition an answer was filed by the bank, and to the answer a replication was filed by the defendants in error, and upon the issues joined therein the court made its findings of fact—which, indeed, were not traversed—and upon them gave judgment against the plaintiff in error in favor of the defendants in error for the amount of their respective claims, and it is to this judgment that this writ of error is prosecuted. Such other facts as throw light upon the controversy will be stated further on in the opinion.

The objections which the plaintiff in error, in varying forms, has assigned to this judgment are: That there was no action pending at the time the judgment complained of here was entered in which the court had jurisdiction to enter the same, or in which defendants in error could properly intervene as against the German National Bank, hence the question of costs, as against the plaintiff in error, not having been reserved at the time the order of consolidation of the two suits was made, it fell at that time, and could not be revived; it was error to render any judgment at all in favor of the defendants in error as individuals, but if any judgment was proper it should have been in favor of Bishop as receiver for their benefit; the judgment entered here January, 1901, is void, because it was given long after the final decree in the action had been signed, to wit, March 28, 1898, and there was no reservation in the final decree, or any retention by the court, of jurisdiction over the German bank, either to enter judgment on the merits, or to tax costs of receivership, against it. Under these different heads, which

really are more or less interwoven, the legal ques-
tions will be treated.

1.   When two or more separate actions pending
in the same court are consolidated for trial, at least
some of the authorities say that each of them is
thereby discontinued as such, and the consolidated
action proceeds as if it had been originally brought
as a single action for the purpose of determining all
the issues included within the former and constitu-
ent actions.   And it would seem that, if no provision
or reservation is made at the time of consolidation
with reference to the costs of the separate actions
accruing before the union is effected, it is too late
thereafter to tax them in the consolidated action.
(6 Enc. Pl. & Pr., 699 *et seq.*)   So that, as it is said,
in a final judgment in a consolidated action only
such costs as are incurred after the order of consoli-
dation is made can be entered. .  Relying upon this
principle, plaintiff in error says that, since no pro-
vision was made for the payment of costs in the suit
of the bank against the coal company at the time the
consolidation was made, it was too late thereafter to
make it.

It may be observed that this doctrine seems to
be limited, in the cases cited, to statutory fees or
costs, such as belong to, and are earned by, officers of
the court.   It is .true that the expenses of the receiver-
ship are taxed, and usually spoken of, as costs in the
action, but they stand upon a different footing from
statutory costs of court officials..   But if this were
not so, the contention of plaintiff in error is unsound
for several reasons.   In this order of consolidation
the court expressly reserved jurisdiction to hear and
dispose of all things relating to the case of the bank
against the coal company, or relating to the receiver-
ship therein, as fully as though no order of consolida-
tion had been made.   The very authorities cited by

plaintiff in error—*Hiscox v. New Yorker Staats Zei-tung,* 23 N. Y. Supp. 682, *Browne v. Hickie,* 68 Ia. 330, and *Blake v. Railroad Co.,* 17 How. Pr. 228—say that where provision is made for costs in the order of consolidation, they may thereafter be awarded.

After the order of consolidation was made, the German bank suit, as a separate and distinct action, was discontinued, and nothing further therein could be done. But it remained, by operation of law, as one of the component elements, or issues, in the consolidated action, and every issue and question that could have been determined therein, had no consolidation been made, was still open for decision in the new consolidated action, if for no other reason, because, by the express provisions of the order of consolidation, all the issues therein were carried over into the new action for determination. If these two actions had not been combined, it would have been entirely competent for the court to tax the costs and expenses of the receivership in the bank case against the plaintiff bank, in its action against the coal company, if the fund in the receiver's hands was inadequate. That being so, it necessarily follows that the same result could be reached in the consolidated cause, for jurisdiction over that question was expressly reserved for future consideration. The appropriate suit was pending in which such action could be taken, and the necessary parties were present in court between whom such differences remained for adjustment.

2. Allowances to a receiver for counsel fees and other expenses of a receivership are properly made to the receiver himself, and not to those who furnished supplies or rendered services to him while he was acting in that capacity; but in this case not only was Bishop, the receiver in the bank suit, discharged, but so, also, was MacNeil, the receiver in the suit of

the trust company against The United Coal Company, and neither was before, or under the control of, the court at the time this application for judgment against the bank was made. For that reason it was not improper to give judgment directly in favor of those who furnished supplies to the receiver; at least, the bank may not be heard to object to what, at most, is an irregularity in the usual practice, to which, to say the least, in some measure it contributed.

3. The principal objection seems to be that this judgment was rendered long after the final decree in the cause was entered, and after the lapse of the term, when there were neither parties nor a cause before the court. The final modified decree in the consolidated cause, so far as concerns the question of foreclosure of the mortgage, was entered May 28, 1900, and which was made to conform to the modification by this court of the original foreclosure decree of March 28, 1898, and therein it was recited that all questions not thereby disposed of were reserved for future adjudication, and permission was given to any party, or any intervening creditor or claimant, to apply to the court from time to time, and at any time, upon proper notice, for such other or further order of relief as was not inconsistent with the final decree itself.

We are not now concerned with the question, for plaintiff in error is not in a position to raise it, and has not done so, as to whether an appeal was permissible from the order of foreclosure of March 28, 1898. The doctrine has been declared that when causes have been consolidated for trial as one action and the issues in one of the constituent cases have been heard and judgment thereupon given, no appeal therefrom can be taken until all of the issues have been disposed of, though, when all are decided, an appeal from one of the judgments only may be

taken (*Mills v. Paul*, 30 S. W. Rep. 242) ; for, as it is said, there can be but one final judgment in an action, and until all the issues are decided, a judgment as to some and not as to others is not final in the sense that it can be reviewed by an appellate court.   But whether that doctrine applies here is not important, for, in addition to the reason already given, no objection on such ground was ever made to the review which was had of the foreclosure decree, and that objection cannot now be made by plaintiff in error; and it is very clear that the issue which is presented on the pending review was not decided in the foreclosure decree, but was expressly left open for future determination. This order awarding the relief here given is not, in any sense, inconsistent with the foreclosure decree, but in harmony with, and supplemental to, it.

But a careful examination of the voluminous and somewhat complicated record discloses the fact that, as was remarked by this court in its opinion in *International Trust Co. v. United Coal Co., supra,* only the issues in the consolidated cause which pertain to the foreclosure of the mortgage—that is, with the exception hereinafter noted, only those issues which originally were included in the separate suit of the trust company against the coal company— were disposed of either in the first decree of March 28, 1898, which was reversed by this court, or in the final modified decree of May 28, 1900, the one under which the sale was made.   After the order of consolidation was entered, the bank took no further steps in the premises, never sought for, or obtained, any relief against The United Coal Company, and up to the present time no trial has been had of, or judgment entered in, its action upon the note, either refusing or denying it the relief asked.   It is altogether clear that all the issues which were included in the

suit of the bank against the coal company which afterwards constituted issues in the consolidated action—but which, nevertheless, remained entirely distinct from the component issues of the trust company case—still remain undisposed of, and in none of the decrees or judgments entered by the trial court, or by this court, was any attempt made to determine any of the issues in the bank suit, save only that as to the rank of the lien of the receiver's certificates.

Our construction of the various orders and decrees made is, that all of the issues and questions included in the suit of the bank against the coal company, except as to the rank of the receiver's certificates, were open for adjudication by the district court at the time the defendants in error presented their petition for judgment against the bank for the amount of the supplies which they furnished to its receiver. The fact that the bank was indifferent to the success of its suit against the coal company, and that it has not seen fit to. press it to a conclusion, does not operate to deprive defendants in error (petitioners below) of their right to proceed against it for supplies furnished to its receiver, when the fund in his hands proves insufficient for their liquidation.

4. It is further contended that when the defendants in error, as interveners in the consolidated cause, sought to make the receiver's certificates, which they obtained for the supplies which they furnished, liens ahead of the prior mortgage, they thereby elected one of two inconsistent remedies open to them, in that they sought to realize upon their claims from the fund in the hands of the receiver, instead of looking to the plaintiff bank, and therefore they may not thereafter, when they failed in their first attempt, proceed against the bank.

The doctrine of election holds good only when the remedies are inconsistent with each other. Here there is no inconsistency at all. On the contrary, they are clearly consistent, and until satisfaction has been had, it was proper to pursue either, or both, of the remedies.—*Woolworth v. Gorsline*, 30 Colo. 186. *Bradner, Smith & Co. v. Williams*, 178 Ills. 420, is quite in point. Under the doctrine of *Welch v. Renshaw*, 14 Colo. App. 526, the bank was liable for these claims. Indeed, plaintiff in error does not seriously contend that a recovery would not be proper, had application been made at what it calls the right time and in an appropriate way.

5. There is no force in the point sought to be made by plaintiff in error that, had the bank been seasonably advised that defendants in error intended to look to it, it could have protected itself as against The United Coal Company; for it clearly appears from this record that the entire assets of the coal company were inadequate to pay debts and incumbrances which were ahead of any lien or claim of the bank. Besides, when the bank had obtained the appointment of a receiver in its suit against the coal company, it acted at its peril, and was charged with knowledge of the fact that, if the fund which the receiver took possession of was inadequate to defray the costs and expenses of the receivership, it, as the party responsible for the order of the court making the appointment, might be compelled to care for such expenses. This being true, it was not incumbent upon defendants in error to advise the bank that they would look to it for payment, for the law imposes the liability in just such cases as this record discloses; and the record further shows that, had defendants in error specifically notified the bank at any time during the progress of these cases that they would look to it for their claims, it would have been unable

to protect itself or save itself from loss by any action that it might have taken against the coal company.

We have examined with care not only the briefs of counsel, but the authorities on which they rely. Those cited by plaintiff in error, though numerous, are not in point, because the facts to which they are sought to be applied are absent from this record. The difficulty with the argument of plaintiff in error is, that its premises are entirely wrong and at variance with, and directly contradicted by, the record itself.

The judgment of the court is right, and it should be affirmed.                            *Affirmed.*