# Crump & Field v. First National Bank of Pikeville et al.

(Decided May 17, 1929.)

HAGER, PRICHARD & MALIN for appellants.

JOHNSON & HINTON for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—Reversing.

This appeal presents but one question; that is, whether a receiver's expenses incurred in operating the business put into his hands should be charged against the plaintiffs in the action when the fund in court is insufficient therefor.

On May 15, 1924, the appellant, Crump & Field, obtained a judgment against Elkhornseam Collieries Company for the sum of $179.10. On September 16, 1924, it, together with the Elkhorn Wholesale Grocery Company, W. G. Andrews, George De Witt Shoe Company, Goodman Manufacturing Company, B. F. Goodrich Rubber Company, and Carson-Pierre-Scott Company, also creditors of Elkhornseam Collieries Company, instituted an equitable action in the Pike circuit court against it and J. P. Burton Coal Company for the purpose of enforcing their claims and demands, and to set aside and cancel on the ground of fraud, and as a preferential conveyance, a mortgage for the sum of $15,000 executed by Elkhornseam Collieries Company to J. P. Burton Coal Company. In the petition the plaintiffs asked for the appointment of a receiver ''to take charge and preserve the property and rights of the Elkhornseam Collieries Company subject to orders of the court.'' On October 6, 1924, the receiver, out of term time, filed a preliminary report, in which he stated to the court that, if he were authorized to make certain repairs to the property of the collieries company, and to pay the taxes then due thereon, and to borrow $3,500 with which to meet the first month's pay roll, and authorized to operate the mine, he could produce a profit of approximately $2,800 per month. He requested the court to grant him authority to borrow $5,-522.83, for those purposes and to issue receiver's certificates in that sum and to operate the mines. On the same day the court entered an order authorizing the receiver to borrow the sum requested, and to issue certificates in that sum and to open and operate the mines. The receiver operated the mine for several months, during which time he incurred an indebtedness aggregating $11,833.78. Some months after the institution of the action, Chas W. Freeman filed a petition to be made a party therein, setting up the fact, that on April 24, 1922, Elkhornseam Collieries Company became indebted to him in the sum of $30,-000, and to secure which it executed to him a mortgage on all of its property; that his debt was past due; and he sought the enforcement of his lien by a sale of all the property. The court directed a sale of the property, which brought $43,700. In determining the priority of liens, the court adjudged that the proceeds of sale be applied, first, to the payment of the costs of the action, including allowance to the receiver and his attorneys; taxes for the year 1925; the outstanding receiver's certificates

and indebtedness incurred by the receiver, for which no certificates had been issued, to an aggregate amount of $11,833.78; second, to W. R. Elliott, for royalties under the terms of the lease held by the company, $3,600; third, to J. N. Craft on his claim arising under the Workmen's Compensation Law in the sum of $819; fourth, claims of certain employees of the mining company to the amount of $6,071.89; and, fifth, to the mortgage lien of Chas W. Freeman in the sum of $30,000, with interest from August 1, 1922. On appeal to this court that judgment was reversed. This court held that the proceeds arising from the sale of the coal company's property should be applied, first, to the payment of the costs of the action, including allowance to the receiver for his services in caring for and preserving the property during the pendency of the action, and a fee to his attorney; next, to the payment of receiver's certificates amounting to the sum of $5,187.70 issued for the payment of taxes, insurance, and royalties due the coal company's lessor; and then to the payment of Freeman's mortgage lien and interest. See Freeman v. Craft, 220 Ky. 15, 294 S. W. 822.

This distribution of the proceeds of sale left unpaid certain receiver's certificates and expenses incurred by receiver for which no certificates were issued, aggregating the sum of $7,215.14, expended by the receiver solely in operating the mine. For this sum the court rendered judgment against appellant and the others herein named, who joined with it, as plaintiffs, in instituting the receivership proceeding, and to reverse which this appeal is prosecuted.

Appellant contends that plaintiffs in a receivership suit are not liable for expenses or costs incurred, unless, responsibility was imposed by the court as a condition to the appointment, or unless the court was without authority to appoint a receiver, or the appointment was wrongfully made. It relies upon the cases of Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 S. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155; Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Farmers' Loan & Trust Co. v. Oregon Pac. Co., 31 Or. 237, 48 P. 706, 38 L. R. A. 424, 65 Am. St. Rep. 822; Lembeck v. Jarvis Terminal Cold Storage Co., 68 N. J. Eq. 352, 59 A. 565. Appellees contend that, where a receiver has been appointed to take charge of private property which is finally determined to belong to another or to be incumbered beyond the amount realized by the

receiver, without the consent of and without notice to the successful claimant or holder of the equity, it is within the discretion of the court to tax the receiver's costs and expenses against the party or parties who caused the receiver to be appointed. They rely upon the cases of Ephriam v. Pacific Bank, 129 Cal. 589, 62 P. 177; German National Bank v. J. D. Best & Co., 32 Colo. 192, 75 P. 398; Frick v. Frick, 124 Iowa, 529, 100 N. W. 513; and numerous other cases cited in their brief.

The question seems to be a new one in this jurisdiction, and counsel have filed exhaustive briefs containing citations of, and excerpts from, numerous authorities from courts of last resort of other jurisdictions in support of their respective contentions.

The general rules applicable to the question presented are stated in 23 R. C. L. 106, 107, thus:

"The courts of most jurisdictions are vested with large discretion in determining who shall pay the cost of receivership, and, according to the justice and equity of each case, may assess the costs of the receivership against the fund, against the applicant, or apportion them among the parties. It may be stated as a general rule, however, that where there is no question as to the legality or propriety of the appointment of the receiver, the receiver's compensation and expenses are payable from the funds in his hands, no part thereof being taxable against the party at whose instance the receiver was appointed. Many cases hold that the receiver is entitled to receive compensation for his services and reimbursement for his expenditures, in the first instance, from the funds which come into his possession, regardless of who is ultimately successful or is ultimately liable to pay them. Where a court has no power or authority to appoint a receiver in any event, or where, though the court has authority, the appointment is improperly made, there are numerous decisions to the effect that the receiver cannot have his compensation or expenses paid from the property in his hands, but must look to the party at whose instance he was appointed. . . ."

In the cases of Ephriam v. Pacific Bank, German National Bank v. Best & Co., Frick v. Fritz, etc., supra, and in each of the 39 other cases from the courts of Okla-

homa, Washington, Montana, Arkansas, Tennessee, Colorado, Iowa, New York, and Texas, cited and relied on by appellees, the court applied the rule that, where a receiver has taken property under an illegal or unauthorized appointment, he must look for his compensation to the parties at whose instance and for whose benefit his expenses were incurred, and, while in each of those cases the costs of the receivership were taxed against the parties at whose instance and for whose benefit the receiver was appointed, it is made plain by the opinions that this course was pursued because the court found that the receivership was, for some reason, improper or unauthorized, as where the right of the plaintiff to subject property for which he sought to have a receiver appointed to the payment of his claim was successfully resisted; or where the plaintiff, as the result of the litigation, was found to have no right to or interest in the property; or where at his instance and on his motion the receiver had undertaken to operate or carry on the business for plaintiff's benefit and sustained a loss. For those, or similar reasons, it was held to be unjust and inequitable that the plaintiff should be allowed to have the expenses of the receivership satisfied out of the property itself to the detriment of valid lienholders. But those cases are not authorities here, for the reason that the validity of the receivership in this case is not now open to question. In this case the petition set up grounds sufficient under section 298 of our Civil Code to authorize the appointment of the receiver. The circuit court had jurisdiction of the parties and the subject-matter. The appointment and grounds therefor were sustained by the original judgment of the circuit court, and were approved by this court in its opinion in Freeman v. Craft, etc., supra. It cannot be now said, and it is not contended, that the court had no power or authority to appoint a receiver or that the appointment was improperly made. No case has been called to our attention in which the costs of the receivership have been charged against the plaintiffs where the receivership was authorized by the facts and was properly granted, even though the corpus was insufficient to pay prior liens.

On the other hand, the Supreme Court of the United States in Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28 S. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155, dealing

with a situation similar in all respects to the one here, predicates its opinion upon this question:

> "Is a complainant, who has in good faith prosecuted a suit upon a good cause of action, and upon whose application the court has properly appointed a receiver, and who obtains a decree fully establishing his rights, nevertheless personally responsible for a deficiency caused by the failure of the property which is the subject of the suit to bring enough to cover the allowances made by the court to the receiver and his counsel, and the expenses which the receiver, without special request of the complainant in any instance had incurred?"

The circuit court on demurrer held the complainant not liable. The Court of Appeals reversed it, holding that complainant was liable, and remanded the case to the circuit court, where a judgment was entered against the complainant, which, on appeal, was affirmed. On appeal to the Supreme Court, the judgment was reversed. In its opinion Mr. Justice Harlan for the court said:

> "We are of opinion that the Court of Appeals erred in holding that the trust company was liable for the deficiency found to exist. No such liability could arise from the simple fact that it was on plaintiff's motion that a receiver was appointed to take charge of the property pending the litigation. The motion for a receiver was to the end that the property might be cared for and preserved for all who had or might have an interest in the proceeds of its sale. The circumstances seemed to have justified the motion, but whether a receiver should have been appointed or not was in the sound discretion of the court. Immediately upon such appointment and after the qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer or creature, the receiver. . . . .
>
> "The trust company, it is true, invoked the jurisdiction of the court by bringing this suit for foreclosure and sale and making a motion for the appointment of a receiver to hold and manage the property pendente lite. That, surely, the trust company had the right to do, but it did not thereby make itself

ultimately liable for money borrowed and receiver's certificates issued by order of the court. The one person who was in a position to inform the court from time to time of the condition and probable value of the property, and of what was or what seemed to be necessary in order to preserve it for the parties interested in it, was its officer and representative, the receiver. It was at his instance and because of his report of the condition and needs of the property, that money was borrowed and certificates issued in order that expenses incurred in the administration of the property might be met. To hold the trust company liable for indebtedness thus created would be most inequitable, and would not, we think, be in accord with sound principle.

"It is true that cases are cited in which the party bringing a suit, in which a receiver is appointed, has been held liable for expenses incurred by the receiver in excess of the proceeds arising from the sale of the property. But in most, if not all, of those cases the circumstances were peculiar and were such as to make it right and equitable, in the opinion of the court, that that should be done."

Then referring to the cases of Ephriam v. Pacific Bank, supra, Knickerbocker v. McKindley Coal & Mining Co., 67 Ill. App. 293 (cited by appellee), and other cases wherein the parties bringing the suits in which a receiver was appointed were held liable for expenses incurred by the receiver, in excess of the proceeds arising from the sale of the property, the opinion continues:

"They do not, in our judgment, authorize the order made by that court, although they tend to support the rule that cases may arise in which, because of their special circumstances, it is equitable to require the parties, at whose instance a receiver of property was appointed, to meet the expenses of the receivership, when the fund in court is ascertained to be insufficient for that purpose. Here, it is not asserted that the plaintiff trustee was not in the exercise of his strict rights when bringing a suit for foreclosure and sale and asking that the property be put in possession of a receiver. It gave no assurances as to the probable value of the property or of the profits to arise from its management. It misled no one who loaned money to the receiver, or who pur-

chased the certificates. It acted as an ordinary litigant, submitting to the action of the court in all particulars. We do not think that the mere insufficiency of the property or fund to meet the expenses of a receivership entitled the receiver to hold the plaintiff in the suit personally liable, if all that could be said was that he instituted the suit and moved for the appointment of the receiver to take charge of the property and maintain and operate it pending the suit. A receiver, as soon as he is appointed and qualifies, comes, as we have said, under the sole direction of the court. The contracts he makes or the engagements into which he enters, from time to time, under the order of the court, are, in a substantial sense, the contracts and engagements of the court. The liabilities which he incurs are liabilities chargeable upon the property under the control and in the possession of the court and not liabilities of the parties. They have no authority over him and cannot control his acts.''

In the case of Richey v. Brett, 112 Ohio St. 582, 148 N. E. 92, the Supreme Court of Ohio followed those principles, and to the same effect are the cases of Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Farmers' Loan & Trust Co. v. Oregon, P. R. Co., 31 Or. 237, 48 P. 706, 38 L. R. A. 424, 65 Am. St. Rep. 822; Lembeck v. Jarvis, 68 N. J. Eq. 352, 59 A. 565.

But appellees insist that appellant and its coplaintiffs procured the appointment of the receiver to take charge of and operate a coal mine which was incumbered, and which, when sold, proved insufficient to pay the receiver's costs and expenses after satisfying prior liens, and asks, ''Who is to lose the deficit, plaintiffs or those who extended credit to the court's receiver?''

There is no proof that appellant sought any authority for the receiver, other than to hold and preserve the property subject to the order of the court, and we have seen (Trust Co. v. Chapman, supra) it was entitled to do this without making itself liable for money borrowed and receiver's certificates issued by order of the court. Operation of the mine was authorized at the instance and on the motion of the receiver alone, who, as is said in the Chapman case, supra, is an indifferent person between parties; an officer of the court appointed on behalf of all

534

parties, and not of the complainant or of the defendant only; the creature, and arm, of the court.

It is not to be overlooked that the money now adjudged against appellant represents funds expended by the receiver in operating the mine. The ordinary fees of a receivership, including attorney's fees, were allowed and paid from the funds derived from the sale of the property. Appellee voluntarily loaned the money to the receiver. They had at least constructive notice of Freeman's mortgage lien, and are chargeable with knowledge that he was not a party to the suit; that any certificates issued by the receiver were subject to his rights, and that by final action of the court the validity or security of the certificates might be prejudicially affected. 23 R. C. L. 101; Union Trust Co. v. Ill. Ry. Co., 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963; Atlantic Trust Co. v. Chapman, supra.

The case of Atlantic Trust Co. v. Chapman, supra, determines adversely to them every contention urged by appellees to sustain the judgment in their favor. Its principles are unquestionably sound and well reasoned, and, emanating from the highest authority, the court has no hesitancy in following it.

The judgment is therefore reversed, with directions to set it aside and for proceedings consistent with this opinion.