**LEBANON PRODUCTION CREDIT ASS'N. v FELDHAUS, Sr. et**

Ohio Appeals, 1st Dist, Butler Co

No 756. Decided November, 1938.

Maple & Maple, Lebanon, for appellees.

Charles K. Pulse, Cincinnati, for appellant.

**OPINION**

By ROSS, PJ.

This is an appeal on questions of law from the Court of Common Pleas of Butler County. Ohio.

The trial was to the court without a jury.

The plaintiff brought suit to foreclose a chattel mortgage upon a one-half interest in a forty acre crop of wheat, alleged to be the property of Sylvan Corwin, the other one-half interest in the crop being admitted to be the property of Corwin's co-defendant, John Feldhaus.

For the sake of defining the issues presented to this court only a brief statement of facts is necessary.

Corwin and Feldhaus had been for some time previous to the incidents furnishing the basis for the present litigation, respectively — tenant and lessor under a written lease, which terminated January 10, 1937. In the summer of 1936—the tenant house burned. Shortly thereafter upon the representation of Feldhaus that a new tenant house would be erected, a verbal agreement to continue the relationship was entered into between the parties. The new lease was to become effective January 11, 1937. Corwin rented a house about one mile from the farm of Feldhaus, and continued to work upon the farm. The crop of wheat in question was planted by Corwin in the fall of 1936. Feldhaus furnished the seed. About January 1, 1937, Corwin concluded that he could not afford to continue the arrangement as Feldhaus had not erected a new tenant house and Corwin was compelled to pay rent for another residence.

Corwin notified Feldhaus that he was abandoning the farm. Some arrangement was made between the parties at this time and a division of property was made. The terms of the settlement are not clearly defined in the record. It is clear, however, from the evidence presented by Feldhaus that Corwin did assert a claim for $100 for work in connection with planting the crop. No definite mention of this particular claim was made by Corwin in his answer and cross-petition filed in this case. He contends that a claim for relief upon this item is covered by his general prayer for relief in law and equity. Feldhaus, on the other hand, asserts that he was taken by surprise upon this point and was given no opportunity to meet it. An examination of the record shows that it came up

incidentally when Feldhaus exhibited a scrap of paper containing the claim of Corwin at the time he left the Feldhaus farm.

This claim must be based upon either an express contract or quantum meruit. No express contract covering this amount appears to have been substantiated by proof. The trial court evidently took the view that Corwin was entitled to the $100 for work and labor as a matter of equity between the parties. Corwin's pleading was never amended to include the new cause of action.

It must be borne in mind that the action originated as a foreclosure proceeding against Corwin. The court found and the evidence sustains the finding that—the mortgage did not cover the wheat crop, as Corwin had parted with all title thereto when he abandoned the farm. It is difficult to see how under our present practice the action could develop into a controversy between the two defendants over matters wholly extraneous to the original proceeding. It could not so develop over the objection of Feldhaus.

It appears further, however, that Feldhaus accepted the situation, answered the several claims made by Corwin, as well as the claims of the original plaintiff mortgagee.

Corwin in his pleading states the existence of the contract "and that said defendant Sylvan Corwin has against the said defendant John Feldhaus, Sr., the following claims." He then proceeds to set out facts establishing six claims, none of which includes the claim of work and labor for planting the crop. It is our conclusion that the claim was not pleaded and the court committed error in rendering judgment for $100 covering this item, when no facts were alleged sustaining same, no prayer made for same, and no amendment asked for at the trial covering same. The presence of this item was wholly incidental to the issues presented to the court. If Corwin has any such claim, he can still present it against Feldhaus in a proper action. The judgment of the court thereon is set aside, and Corwin is still possessed of any rights he may have had before the litigation here considered.

The court also rendered judgment for $48.00, the amount of rent paid by Corwin for a residence after the burning of the tenant house. The tenant house burned while Corwin and Feldhaus were operating under the previous agreement. There is nothing in the relationship of landlord and tenant requiring the lessor to provide new quarters when the tenant house is destroyed. No special agreement appears covering such a claim. Under the statute, §8521 GC, the common law rule requiring the tenant to continue to pay rent is abrogated in the absence of special agreement. There is no provision of law requiring the landlord to furnish new quarters.

An order in the alternative was made as to a brooder. This court does not know what action was taken under the order. It was not such a final order as will sustain an appeal.

It is contended that the receiver should not be compensated for services in reaping the crop. Feldhaus is the appellant. He took no appeal either from the appointment of the receiver or the overruling of a motion to discharge. He prayed in his answer and cross-petition for alternative relief, suggesting that if the receiver was properly appointed, certain charges be paid by the receiver to him.

Feldhaus did not appeal either from the appointment of the receiver or the entry overruling his motion to discharge the receiver. He moved for increase in bond.

The receiver filed two reports—in the first, it appeared that he employed men to harvest the crop—thresh it—and store it. In the second report, under order of court he sold it. All of this was for the benefit of the defendant Feldhaus. The receiver also employed counsel. His appointment was an act of the court. He became an officer of

the court. He was appointed and continued to operate in an ancillary proceeding wholly collateral to the main action. In the ancillary proceeding Feldhaus possessed full rights of appeal. **Hoover-Bond Co. v Sun-Glow Industries, Inc., 57 Oh Ap 246, 253.**

Having failed to avail himself of the right to appeal from the appointment of the receiver and the overruling of his motion to discharge, Feldhaus cannot now complain that proper ifees should be allowed the receiver operating as an officer of the court under its orders.

We conclude, that as the appointment of the receiver remained unchallenged and he performed services in connection with the corpus in his custody, he is entitled to the compensation allowed.

We conclude, therefore, that the judgment of the Court of Common Pleas shall be reversed to the extent that it awarded $100 against Feldhaus for work and labor and $48.00 for rent, and judgment on those items is entered for the defendant, Feldhaus.

The appeal as to the $25.00 for the brooder is dismissed, there being no final order to review here.

The award of $50.00 compensation for the receiver is affirmed.

HAMILTON, J., concurs.

MATTHEWS, J., concurring in part and dissenting in part.

I concur in the judgment excepting that part which affirms the allowance of the receiver's compensation out of the fund produced by the sale of the wheat, which the trial court found was the exclusive property of the defendant, John Feldhaus, Sr., and upon which the trial court also found the the plaintiff had no lien by virtue of the chattel mortgage sued upon or otherwise. The effect of the court's holding is to cast the entire cost of this receivership upon Feldhaus, notwithstanding the decision on the merits was in his favor. This, in my judgment, is wrong, both morally and legally. The plaintiff having failed to prove its case, judgment for costs including the allowance of compensation to the receiver should have been adjudged against it.

In Crump Field v First Nat'l Bank 229 Ky. 526, 17 S. W. (2d.) 436, 68 A. L. R. 872, at 875, the court says:

"In the cases of Ephraim v Pacific Bank, 129 Cal. 589, 62 Pac. 177; German Nat. Bank v J. D. Best & Co., 32 Colo. 192, 75 Pac. 398; Frick v Fritz, 124 Iowa 529, 100 N. W. 513, supra, and in each of the 39 other cases from the courts of Oklahoma, Washington, Montana, Arkansas, Tennessee, Colorado, Iowa, New York, and Texas, cited and relied on by appellees, the court applied the rule that, where a receiver has taken property under an illegally or unauthorized appointment, he must look for his compensation to the parties at whose instance and for whose benefit his expenses were incurred, and, while in each of those cases the costs of the receivership were taxed against the parties at whose instance and for whose benefit the receiver was appointed, it is made plain by the opinions that this course was pursued because the court found that the receivership was, for some reason, improper or unauthorized, as where the right of the plaintiff to subject property for which he sought to have a receiver appointed to the payment of his claim was successfully resisted; or where the plaintiff, as the result of the litigation, was found to have no right to or interest in the property; or where at his instance and on his motion the receiver had undertaken to operate or carry on the business for plaintiff's benefit and sustained a loss. For those or similar reasons, it was held to be unjust and inequitable that the plaintiff should be allowed to have the expenses of the receivership satisfied out of the property itself to the detriment of valid lien holders."

In Atlantic Trust Co. v Chapman, 208 U. S. 360, the court held that the complainant was not liable for a deficiency when property did not sell for enough to pay receiver's fee and expenses, but the question before the court as stated by the court itself shows the distinction between that case and this:

"Is a complainant, who has in good faith procured a suit upon a good cause of action, and upon whose application the court has properly appointed a receiver, and who obtains a decree fully establishing his rights, nevertheless personally responsible for a deficiency caused by the failure of the property which is the subject of the suit to bring enough to cover the allowances made by the court to the receiver, and his counsel, and the expenses which the receiver, without special request of the complainant in any instance, had incurred."

It is seen from that quotation that the complainant "obtained a decree fully establishing his right". In the case before us, it was the defendant who obtained the decree fully establishing his right.

The question presented by this record is not whether the receiver is entitled to some compensation. I assume that he is. The question is, upon whom the burden of paying him shall be cast. It seems clear to me that the costs including the receiver's fee ordinarily should follow the judgment, and, as the judgment was against the plaintiff, it should pay the costs, unless the court should find that certain services of the receiver were beneficial to the defendant, in which event, the court would be justified in adjudging that portion against him. This record does not present such a case.

Where a receiver is appointed for the benefit of general creditors, it is uniformly held that the expenses of the receivership cannot be charged against funds resulting from the sale of mortgaged property, to the detriment of the mortgagee. Only the expenses of such services as the court found were beneficial to him could be charged against him. Marsh v Marsh Co., 104 A. L. R. 891, and annotation; 34 O. Jur. 1053. In no case has a mortgagee been charged with all of his own costs in the proceedings and the costs of the receivership, and this is true even where the plaintiff was justified in applying for a receiver, which is in marked contrast to the facts in this case, in which it was found that the plaintiff was entitled to no relief whatsoever.

Surely the absolute owner of the property does not stand before the court in a less favorable position than the holder of the conditional title created by the mortgage.

It should not be supposed that this record shows that the receiver performed any personal, manual services in harvesting and storing this wheat. The wheat was being harvested when he was appointed. The actual harvesting was done by others who had been paid therefor.

For these reasons, I dissent from that part of the judgment charging the receiver's compensation against this fund, particularly as this amount taken from Feldhaus' property through the wrong of the plaintiff was not adjudged against the plaintiff in favor of Feldhaus.